UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NASIR LAMONT BANKS,

    Petitioner,

v.

THOMAS WINN,

    Respondent.

Case No. 16-13294
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Nasir Lamont Banks filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions for first-degree felony murder, assault with intent to commit murder, and several firearm offenses. As none of the arguments raised warrant habeas corpus relief, the petition is denied.

**I.**

Banks' convictions arise from a shooting that occurred at a drug house in Detroit, Michigan in 2011. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> The prosecution charged defendant with the murders of two people at a drug house in Detroit. At trial,[1] witness S.J., one of the drug dealers who used the house to sell drugs, testified that he awoke at the house on the morning of November 30, 2011 to the sound of gunfire, and found that he had suffered three gunshot wounds. He fled to an upstairs bathroom, and heard more gunshots. After a few minutes, S.J. attempted to go downstairs, and saw defendant near the bottom of the steps holding a shotgun and a bag of marijuana that the drug dealers kept in the house. S.J.

---

[1]This appeal is from defendant's retrial—the jury in his initial trial could not reach a verdict. The evidentiary portion of defendant's first trial occurred in November and December of 2012; the evidentiary portion of defendant's retrial occurred in July 2013.

retreated to the attic until the police arrived. As officers assisted him downstairs, the witness saw the two victims bloodied and lying on the floor.[2]

After a hospital stay, S.J. offered a statement on the shooting, in which he described [Banks] as the shooter. He subsequently identified [Banks] as the shooter in a photographic lineup. S.J.'s identification of defendant as the murderer was supported by testimony from a frequent customer of the drug house, who saw a man who resembled [Banks] leaving the house with a shotgun on the morning of the shooting.[3] The customer also gave a statement and description to the police, and identified defendant as the man he saw from a photographic lineup.

*People v. Banks*, No. 317804, 2015 WL 447465, *1 (Mich. Ct. App. Feb. 3, 2015) (footnotes in original).

Following his convictions and sentencing, Banks filed a direct appeal. He raised several claims, including those now presented on habeas review. The Michigan Court of Appeals denied relief and affirmed Banks' convictions. *Id.* at *1-8. Banks filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Banks*, 868 N.W.2d 638 (Mich. 2015). Banks also filed a petition for a writ of certiorari with the United States Supreme Court, which was denied. *Banks v. Michigan*, 136 S. Ct. 1669 (2016).

Banks thereafter filed his federal habeas petition. (ECF No. 1.) He argues that the trial court abused its discretion and denied him a fair trial by denying his motion for adjournment and granting only a one-day continuance, thereby impeding defense counsel's ability to adequately prepare for trial. Alternatively, he argues that his counsel was ineffective for failing to adequately impeach the prosecution witness who identified him. Second, he argues that he was denied due process and a fair trial by the introduction of in-court identifications tainted by suggestive photographic lineups.

---

[2]S.J. also testified that defendant's brother shot him in April 2012, in apparent retaliation for his cooperation with the authorities. We discuss this episode in greater detail later in the opinion.

[3]The customer, A.B., testified that he was driving his car past the drug house the morning of the murders, because he intended to go inside to buy drugs.

Third, Banks asserts that the trial court abused its discretion and denied him a fair trial by admitting, over objection, evidence of a subsequent shooting committed by his brother. Fourth, he asserts that the trial court denied him a fair trial by providing the jury with a transcript of the direct examination of the prosecution's main witness but not the cross-examination. And lastly, Banks argues that he was denied a fair trial by the unsupported instruction of aiding and abetting and by defense counsel's ineffectiveness in failing to object. None of these arguments warrant habeas relief.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA) (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). If a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief "unless the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim *de novo*." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

## A.

Banks claims the trial court erred in denying his request for an adjournment and only granting a one-day continuance so that newly-appointed counsel could prepare for trial. He further

asserts that his trial counsel was ineffective for failing to properly impeach the prosecution's star witness. The Court will address each in turn.

1.

The Warden argues that Banks waived any challenge to the one-day continuance because his counsel agreed to it. Therefore, in the Warden's view, this claim is procedurally defaulted and should not be reviewed by the Court.

The Michigan Court of Appeals found that Banks "waived his ability to challenge the length of an adjournment 'when defense counsel clearly expresses satisfaction with the trial court's decision' on the adjournment." *Banks*, 2015 WL 447465, at *1 (quoting *People v. Kowalski*, 803 N.W.2d 200 (Mich. 2011)). And, according to the Michigan Court of Appeals, Banks' defense counsel did just that when "the trial court granted an adjournment of one day to give defense counsel an opportunity to adequately review the record, and specifically asked the attorney whether he would be 'completely prepared' to 'go forward with the trial,' to which the attorney responded 'by tomorrow, I will be prepared your Honor.'" *Id*. at *2.

In most circumstances, a federal court may not consider the federal claims in a habeas corpus petition if a state court denies relief because the petitioner "failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). To cement a procedural default, Banks must have failed to comply with a procedural rule, the state courts must have enforced the rule against him, the rule must be an "adequate and independent" ground for barring habeas corpus review, and Banks cannot excuse the default. *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state

procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last explained state court ruling is used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

This claim has been procedurally defaulted. The Michigan Court of Appeals rendered the last reasoned opinion on the continuance claim. In denying relief, the court relied upon a state procedural bar—the waiver rule. *Banks*, 2015 WL 447465 at *1–2 (citing *People v. Kowalski*, 803 N.W.2d 200, 200–11 (Mich. 2011)). "The state courts actually enforced the waiver rule, which is independent because it does not rely on federal law and adequate because it is firmly established and regularly followed by Michigan courts." *Jackson v. Romanowski*, No. 15-2399, 2016 WL 1458221, at *2 (6th Cir. Apr. 13, 2016) (citing *McKissic v. Birkett*, 200 F. App'x 463, 471 (6th Cir. 2006)).

"Where, as here, [Banks] has procedurally defaulted claims, 'federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Dufresne v. Palmer*, 876 F.3d 248, 255–256 (6th Cir. 2017) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

To excuse the default, Banks appears to argue the one-day continuance amounted to a fundamental miscarriage of justice. But "[t]he miscarriage-of-justice exception requires a prisoner to present new reliable evidence showing that he is actually innocent." *Dufresne*, 876 F.3d at 256 (citing *Schlup v. Delo*, 513 U.S. 298, 321, 324 (1995)). To be credible, such a claim requires a petitioner to provide new, reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324. Moreover, actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Banks makes no such showing. At best, he highlights that a bad cross examination and other impediments to preparation left his lawyer less than

effective. But even if Banks' lawyer was ineffective, that alone does not establish that Banks was factually innocent of felony-murder.

This claim is thus barred by procedural default.

**2.**

Banks asserts, too, that his trial counsel was constitutionally ineffective for failing to properly impeach the surviving shooting victim, S.J., and a drug house customer, A.B., with their prior trial testimony.

To succeed on his ineffective-assistance claim, Banks must point to evidence of his trial counsel's deficient performance and then explain how that deficient performance prejudiced his legal defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). And when § 2254(d) applies, as it does here, Banks must show that the state court unreasonably applied *Strickland*. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011).

The Michigan Court of Appeals denied relief on this claim. It explained,

> Here, as noted, defendant asserts that his attorney gave him ineffective assistance because the attorney supposedly did not use inconsistent testimony from the first trial to impeach two witnesses, S.J. and A.B., at retrial. Though defendant raises multiple instances of alleged ineffective assistance, all of his allegations lack merit, and only one deserves extended discussion.
>
> Defendant says that his attorney should have made use of S.J.'s testimony from the first trial, which stated that S.J. did not immediately name defendant as the shooter when the police arrived at the scene. But it is unlikely defendant's attorney needed to draw any distinction between S.J.'s testimony on this subject at the first trial and S.J.'s testimony during the retrial, because his retrial testimony on the matter was similar to his original testimony. In any event, defendant's lawyer spent almost the entirety of his closing argument questioning the accuracy and veracity of S.J.'s testimony. And defense counsel specifically emphasized that some of the police officers who responded to the scene documented only S.J.'s statement that an unknown black male had shot at him. In sum, the record belies defendant's extensive claims of ineffective assistance, and he has failed to establish that counsel deprived him "of a substantial defense."

*Banks*, 2015 WL 447465 at *2–3 (footnote omitted).

The state court's decision did not involve an unreasonable application of *Strickland* nor an unreasonable determination of the facts.

As to the facts, Banks does not present anything to challenge the Court of Appeals' characterization of the record that there was not a strong basis to impeach S.J. based on his prior testimony and that his counsel spent considerable time challenging S.J.'s testimony. Indeed, from the Court's review of the relevant portions of the record from both trials, S.J.'s testimony was similar. (*Compare* ECF No. 9-15, PageID.689, 750, *with* ECF No. 9027, PageID.1651, 1669.) Further, the record indicates that, as he stated he would be, trial counsel was prepared for trial and was familiar with the witnesses' prior police statements, preliminary examination testimony, and trial testimony. (*See* ECF No. 9-27, PageID.1625–1664, 1666–1668, 1685–1689; ECF No. 9-29, PageID.2049–2066.) In fact, trial counsel impeached S.J. with his prior trial testimony, (ECF No. 9-27, PageID.1625–1627, 1628–1629, 1632–1633), and got S.J. to change or clarify his testimony when confronted with his prior preliminary examination testimony, (ECF No. 9-27, PageID.1643–1644, 1660). Counsel also impeached A.B. with his prior police statements and disputed A.B.'s identification of Banks as the person he saw exiting the house at the time of the crime. (ECF No. 9-27, PageID.1687–1688.) Additionally, trial counsel challenged the prosecution's case, discussed the discrepancies and inconsistencies in the witnesses' testimony, and presented a coherent defense during closing arguments. (ECF No. 9-29, PageID.2049–2066.) So Banks fails to show that the Michigan Court of Appeals made an unreasonable determination of the facts based on the record or unreasonably applied *Strickland* in finding that Banks' counsel was not ineffective for failing to properly impeach S.J. Habeas relief is not warranted on this claim.

Banks also lists additional claims of ineffective assistance of counsel in his reply brief. (*See* ECF No. 10.) While these claims are best viewed as fundamental-miscarriage-of-justice arguments, which are meritless for the reasons set forth above, Banks is also not entitled to habeas relief on these additional claims because he first raised them in his reply. Thus, they are not properly before the Court for review. *See, e.g., Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (ruling that district court did not err in declining to address claims first raised in the reply brief). It also appears that Banks did not properly exhaust these additional claims in the state courts. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("state prisoners must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

And even if the Court were inclined to consider the additional ineffective assistance claims, it would still deny relief on the merits. Banks merely lists the claims and does not explain with any specificity how counsel's performance was deficient, how he was prejudiced by counsel's conduct, or how he was deprived of a substantial defense. Conclusory allegations are insufficient to warrant a grant of federal habeas relief. *See, e.g., Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review). Habeas relief is thus not warranted on Banks' additional and unsupported claims.

**B.**

Banks next asserts that he is entitled to habeas relief because the witnesses' identifications were tainted by unduly suggestive photographic arrays.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification runs afoul of due process, courts look first to whether the identification procedure was impermissibly suggestive. *Ledbetter v. Edwards*, 35 F.3d 1062, 1070-71 (6th Cir. 1994). The Supreme Court has stated that the risk of misidentification from a photo array increases where (1) "the police display to the witness only the picture of a single individual who generally resembles the person he saw"; (2) the police show the witness "the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized"; or (3) "the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime." *Simmons v. United States*, 390 U.S. 377, 384 (1968). In sum, an identification based on a photo array is unduly suggestive if the circumstances "steer[ ] the witness to one suspect or another, independent of the witness's honest recollection." *Williams v. Lavigne*, 209 F. App'x 506, 510 (6th Cir. 2006) (citing *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001)).

If the procedure was impermissibly suggestive, the second step is to determine whether the identification nonetheless has sufficient indicia of reliability considering all the circumstances. *Ledbetter*, 35 F.3d at 1070–71. Five considerations bear on the reliability of an identification: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation;

and (5) the length of time that has elapsed between the time and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). A defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a habeas petitioner meets this burden of proof that the burden shifts to the state to prove that the identification was reliable. *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004).

Applying these standards, the Michigan Court of Appeals ruled that the photographic arrays were not unduly suggestive. The court explained:

> Here, defendant unconvincingly argues that the police gave S.J. and A.B. impermissibly suggestive pretrial photographic lineups, and that the trial court erred when it refused to suppress their identification testimony. Both S.J. and A.B. identified defendant in photographic lineups that were not "impermissibly suggestive."
>
> S.J. viewed the photographic lineup on December 12, 2011, less than two weeks after the shootings. Both S.J. and a police officer testified that S.J. was mentally alert during the viewing, and that S.J. immediately identified defendant as the shooter with certainty. S.J. denied that the police suggested which photograph he should select. Instead, S.J. stated that he immediately selected defendant as the assailant because he had encountered defendant on at least 25 occasions before the shooting, and that he had an unobstructed view of defendant when he attempted to escape the shooting down the stairway. And, though S.J. recalled that, when presenting the photo array, a police officer asked him which man shot him, "the fact a victim is told the attacker is in the lineup does not alone render a lineup unduly suggestive." *People v. Sawyer*, 222 Mich App 1, 3; 564 NW2d 62 (1997).
>
> A.B. viewed a photographic lineup two weeks after the shooting. Both A.B. and a police officer testified that a police officer asked A.B. whether he recognized anyone on the array from the drug house, and that A.B., without coercion or suggestion, selected the photograph of defendant as the man he saw holding a shotgun outside the house the morning of the shooting. A.B. and the officer's testimony differed only in that the officer estimated A.B. selected defendant's photograph in approximately five seconds, while A.B. did not recall the precise amount of time it took for him to make the selection. Again, A.B. testified that on the morning of the shooting, while he was driving past the drug house, he saw a man, who wore nothing to conceal his head, leaving the house with a shotgun.
>
> As such, there is nothing in the record that indicates that the photographic lineup was so "impermissibly suggestive" that it violated defendant's constitutional rights.

*Banks*, 2015 WL 447465 at *3-4 (footnotes omitted).

The state court's decision is neither contrary to nor an unreasonable application of Supreme Court precedent.

And Bank's arguments to the contrary are unavailing. Despite Banks' assertion, the photo arrays were not invalid because there was no "impartial attorney" present during the process. The Sixth Amendment does not guarantee an accused the right to counsel when police show photo arrays. *United States v. Ash*, 413 U.S. 300, 321 (1973). Second, the fact that the photos in the arrays differed in some respects from the witnesses' initial descriptions does not mean that the arrays were unduly suggestive. Such variations go to the weight, not the admissibility, of an identification. *See Pittao v. Hoffner*, 772 F. App'x 474, 478 (6th Cir. 2018). Moreover, Banks neither alleges nor establishes that the appearances of the men depicted in the photographic arrays differed significantly from each other. While he alleges that he has a tear drop tattoo that the other men in the photo array did not have, the Michigan Court of Appeals specifically found that "[it was] not able to discern a tattoo or anything else unfairly suggestive about the photograph array, and nothing in the evidentiary hearing indicates that such a tattoo was apparent to S.J. and A.B. when they made the identification." *Banks*, 2015 WL 447465, at *4. Such factual findings are presumed correct on habeas review and Banks has not rebutted that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Lastly, the officer's conduct in asking S.J. which man in the photo array shot him did not render the photo array unduly suggestive. *See United States v. Porter*, 29 F. App'x 232, 237 (6th Cir. 2002) (upholding the admission of a photo identification where the officer told the witness that the array contained the suspect but did not suggest which of the six photos showed that suspect). In sum, Banks fails to show that the pretrial identification procedure was unduly suggestive and there is no need to analyze step two.

Habeas relief is not warranted on this claim.

## C.

Banks next asserts that he is entitled to habeas relief because the trial court erred in admitting evidence that his brother shot S.J. before trial and that error amounted to a due process violation.

But the Michigan Court of Appeals denied this claim. And while there was no explicit discussion of Banks' federal due process claim, the federal issue was presented to the state court and "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits." *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

The Michigan Court of Appeals did not unreasonably apply Supreme Court precedent in rejecting this claim. Banks' attorney challenged S.J.'s credibility throughout the trial. So the evidence that Banks told his brother to attack S.J. was relevant in demonstrating that S.J. correctly identified Banks as the shooter. And while this evidence was also prejudicial, the Court cannot find that it was so prejudicial as to render Banks' trial fundamentally unfair.

Banks is not entitled to relief on this claim.

## D.

Banks also asserts that he is entitled to habeas relief because the trial court provided the jury with a transcript of only S.J.'s direct examination testimony but intended to have the court reporter read back S.J.'s cross-examination testimony. Banks says the jury was not able to review the entire transcript "in the same manner." (ECF No. 1, PageID.10.)

During deliberations, the jury requested S.J.'s testimony. (ECF No. 9-31, PageID.2122.) Because there was no transcript of the testimony, the court instructed the jury to "use their

collective memories" for the rest of that day and that the court reporter would work on the transcript that night. (ECF No. 9-31, PageID.2123.) The court reporter was only able to complete about 76 pages of the testimony that night—about half of the testimony. (ECF No. 9-32, PageID.2133.) In order to keep the deliberations moving, the court decided, over Banks' counsel's objection, to provide the portion of the transcript that was then available and have the court reporter read the remainder of the testimony later that afternoon. (*Id*.) So the court instructed the jury that the written portion would be provided to them and that "[a]fter [they] have digested it" the remainder of the transcript would be read to them. (ECF No. 9-32, PageID.2141.) The Court further "ask[ed]" that the jury hear the entire transcript before reaching a decision. (*Id*.) Nothing in the record indicates, however, whether the remainder of the transcript was read to the jury before the jury returned a verdict.

The Michigan Court of Appeals found that Banks' challenge to this decision was meritless:

> Defendant also makes a frivolous argument that involves the provision of transcripts of witness testimony to the jury. The jury made a reasonable request to rehear S.J.'s testimony. Contrary to defendant's argument, the trial court repeatedly advised the jury of its intent to supply the entirety of S.J.'s testimony as soon as it could, part in writing and part by read back. The trial court also ensured fairness to the defense by urging the jury to review both the transcribed portion of S.J.'s testimony and the portion to be later read back. The trial court acted within the discretion vested by MCR 2.513(P) when it repeatedly informed the jury of its intent to provide the entirety of S.J.'s trial testimony and instructed the jury to consider the entire testimony. Defendant's citation of federal case law, which supposedly cautions against reading back only a portion of trial testimony, ignores the Michigan Supreme Court's repeated rejections of any basis for concern in following this procedure. *Howe*, 392 Mich at 675–676; *Klein v. Wagenheim*, 379 Mich 558, 561; 153 NW2d 663 (1967).

*Banks*, 2015 WL 447465 at *1 n.5 (some citations omitted).

The state court's decision does not involve an unreasonable application of Supreme Court precedent. Indeed, Banks cites to no Supreme Court case law that establishes that the trial court's actions violated Banks' constitutional rights. *See Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015)

("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court"). And even assuming Banks' due-process rights were implicated, he cannot show that these rights were violated. If the jury heard the entire testimony, the Court cannot find that Bank's due-process rights were violated because some testimony was provided in writing and some orally. And if the jury did not get the remainder of the testimony read back to them, the Court still cannot find that Banks' due-process rights were violated as the jury was present for the cross examination during the trial and the trial court explicitly instructed the jury to consider the entire testimony.

Habeas relief is not warranted on this claim.

### E.

Lastly, Banks asserts that he is entitled to habeas relief because the trial court gave an erroneous aiding and abetting instruction and because trial counsel was ineffective for failing to object to that instruction.

The Warden contends that the jury instruction aspect of this claim is procedurally defaulted.

For expediency, the Court will skip to prejudice, a requirement to excuse the waiver of Banks' jury instruction claim (by his counsel's agreement to the instruction), *Dufresne*, 876 F.3d at 255–256, and to prevail on his ineffective-assistance-of-counsel claim, *Strickland*, 466 U.S. at 687.

The Michigan Court of Appeals found no prejudice from instructing the jury on aiding and abetting, given that "[a]mple, properly admitted evidence established defendant's guilt[]." *Banks*, 2015 WL 447465, at *7. Indeed, given that there was no evidence that more than one person

committed the crime, it is unclear how the jury could have reached a verdict based on a theory of aiding and abetting. So even if it was error to give the instruction, the error was harmless.

Banks is not entitled to relief on his last claims.

### III.

For the reasons stated above, the petition for a writ of habeas corpus is DENIED. And a certificate of appealability is DENIED because reasonable jurists would not debate whether the petition should have been resolved in a different manner. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

IT IS SO ORDERED.

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE

Date: July 18, 2019

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, July 18, 2019, using the Electronic Court Filing system and/or first-class U.S. mail.

                                                s/William Barkholz
                                                Case Manager